**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 23, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

FRANCISCO JAVIER CASTORENA-
IBARRA,

      Defendant - Appellant.

No. 06-1000

(D. Colorado)

(D.C. No. 04-CR-413 LTB)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

Francisco Javier Castorena-Ibarra pleaded guilty to conspiracy to launder

monetary instruments in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i),

and (h). The district court sentenced him to 87 months' imprisonment, a sentence

at the top of the advisory United States Sentencing Guidelines ("USSG" or

"Guidelines") range, and 3 years' supervised release. Mr. Castorena appeals the

procedural reasonableness of that sentence. We exercise jurisdiction pursuant to

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and, reviewing for plain error, affirm.

## I. BACKGROUND

On September 22, 2004, Mr. Castorena was charged in a five-count indictment. Count One charged him with aiding and abetting the counterfeiting and possession of fraudulent immigration documents in violation of 18 U.S.C. §§ 2 and 1546(a); Count Two charged him with aiding and abetting the possession with intent to use and transfer five or more false identification documents in violation of 18 U.S.C. §§ 2 and 1028(a)(3); Count Three charged him with aiding and abetting the possession of document-making implements with the intent to use them for the production of false identification documents in violation of 18 U.S.C. §§ 2 and 1028(a)(5); Count Four charged him with aiding and abetting the counterfeiting and possession of Social Security Cards with the intent to sell them in violation of 18 U.S.C. § 2 and 42 U.S.C. § 408(a)(7)(C); and Count Five charged him with conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h).

Mr. Castorena and the government subsequently entered into a written plea agreement under which Mr. Castorena agreed to plead guilty to a one-count information charging him with conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h). In exchange, the government agreed to dismiss the indictment.

Pursuant to the plea agreement, Mr. Castorena stipulated to the conduct

underlying the conspiracy to launder monetary instruments charge. He specifically agreed that from around August 11, 2003 through November 14, 2003, he and several others conspired to manufacture and sell counterfeit alien registration receipt cards, Social Security cards, and other identification documents. He further admitted that he used and directed others to use Western Union money transfers in order to send and receive the proceeds from the conspiracy to and from each other, with the intent to conceal the proceeds and further the conspiracy. The plea agreement identified Mr. Castorena as the "organizer" of the conspiracy. Rec. vol. I, doc. 80, at 8.

As evidence, the plea agreement identified fourteen separate money transfers, cumulatively involving $19,050. Mr. Castorena conceded that he received these transfers knowing the proceeds came from the sale of counterfeit identity documents and that more than one hundred counterfeit documents were sold.

On October 7, 2005, the district court held a plea hearing. At the hearing, the district court orally recited the facts underlying the conspiracy to launder monetary instruments charge and asked Mr. Castorena several times whether he understood the terms of the plea agreement. He answered the district court's inquiries affirmatively. Satisfied that his plea was knowing and voluntary, the district court accepted the plea agreement.

In preparation for sentencing, the probation officer submitted a Presentence

Investigation Report ("PSR"). The PSR calculated a total offense level of twenty-five. It also assigned Mr. Castorena five total criminal history points: two for a 1995 conviction for fraud in connection with an immigration document and aiding and abetting, two for a 2003 conviction for illegal re-entry following deportation, and one because Mr. Castorena committed the instant offense while on supervised release. Mr. Castorena did not receive any criminal history points for two other prior convictions – a 1989 conviction for possession of false identification and a 1988 conviction for conspiracy to produce and transfer false identification documents – due to their age. See USSG § 4A1.2(e). Five criminal history points placed Mr. Castorena in a criminal history category of III. An adjusted offense level of twenty-five and a criminal history category of III yielded a suggested sentencing range of 70 to 87 months. The PSR identified no departure issues.

To describe the conduct underlying Mr. Castorena's guilty plea, the PSR quoted directly from the stipulated facts in the plea agreement. See PSR ¶ 6-12. In regard to Mr. Castorena's criminal history, the PSR stated that he was deported following his 1995 fraud conviction. It did not indicate whether he was deported following his three other prior convictions.

In a section entitled "Background Information," see PSR ¶¶ 13-20, the PSR set forth additional facts it deemed "relevant to sentencing," id. ¶ 4. Specifically, this section discussed a large-scale counterfeit document manufacturer and distributor known as the Castorena Family Organization ("CFO"). Among other

things, the PSR provided that (1) the CFO controlled counterfeit identity document operations in numerous U.S. cities, including Chicago, Denver, and Los Angeles, (2) several government investigations into the CFO's operations collectively resulted in the seizure of millions of counterfeit identity documents and the tracking of millions of dollars in proceeds from the sale of those documents, and (3) an investigation in Denver ultimately resulted in the arrest and prosecution of more than thirty-five CFO members, including Mr. Castorena. The PSR identified Mr. Castorena as one of the CFO's "leaders." Id. ¶¶ 13, 20.

In an addendum to the PSR, the probation officer recommended that Mr. Castorena receive a low-end Guidelines sentence of 70-months and three years of supervised release. In doing so, the probation officer incorrectly stated that Mr. Castorena "has *three* prior federal felony convictions that, due to their ages, do not aggravate his criminal history category." Supp. Rec. vol. II, at R-2 (emphasis added). The probation officer also stated, without support from the PSR's criminal history section, that Mr. Castorena had multiple "removals." Id. Mr. Castorena did not object to the PSR's factual recitations or Guideline calculations. Nor did he contest anything contained in the probation officer's sentencing recommendation.

On December 21, 2005, Mr. Castorena appeared before the district court for sentencing. The government asked the court to impose a high-end Guidelines sentence of 87 months. For support, the government emphasized Mr. Castorena's

admitted role as "a leader/organizer" of the CFO and noted that the nationwide investigation into the CFO had resulted "in the conviction of over a hundred individuals, the confiscation of millions of dollars in assets, and indeed this organization has been responsible for millions of counterfeit identity documents." Rec. vol. II, at 4.  In response, Mr. Castorena's defense counsel requested a low-end Guidelines sentence of 70 months.  For support, defense counsel pointed out that a 70-month sentence would already be "significantly longer than any sentence received by any other co-conspirator or involved individual in the actions [the government] is discussing with the Court." Id. at 6.

After adopting the PSR's factual findings and Guidelines calculations without objection, the district court sentenced Mr. Castorena to 87 months' imprisonment and 3 years' supervised release.  Although it acknowledged an 87-month sentence was "not necessarily . . . proportionate" to the sentences imposed on others associated with the CFO, the court concluded several other factors set forth in 18 U.S.C. § 3553(a) "outweigh[ed] the disparity."[1]  Id. at 10.

In discussing the nature and circumstances of Mr. Castorena's offense, the court observed:

---

[1]  Included among the § 3553(a) factors are (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for deterrence; (5) the need to protect the public; (6) the Sentencing Guidelines range; and (7) the need to avoid unwanted sentencing disparities.  18 U.S.C. § 3553(a).

The breadth and scope of the criminal conduct in your case for which you are an organizer and leader is simply breathtaking. That, of course, is summarized by government counsel and is more graphically set forth and explained in paragraphs 13 through 20 of the Presentence Report. Millions of counterfeit identity documents, millions of dollars in benefit from these illicit gains.

Well, the production of one counterfeit document for an immigrant into this country is probably no big deal, but we have millions here. . . . What is so striking about the breadth and scope of your organization is nothing less than striking at the heart of the sovereignty of the United States of America. Every nation, state, be it the United States of America, the Republic of Mexico, has a sovereign right to control its borders. And what you and your organization has [sic] done is strike at the very heart of that sovereign right of this country.

That is one reason why your offense under the circumstances of your case that is before me is so egregiously serious.

Id. at 7-8.

Turning to his criminal history and characteristics, the district court noted that Mr. Castorena "repeatedly violated the law of this country by entering this country illegally." Id. at 9. Ostensibly relying on the misstatement in the probation officer's sentencing recommendation, the court further observed that Mr. Castorena had "*three* prior federal felonies that because of their age aren't counted in calculating under the advice of the Guidelines." Id. (emphasis added). Still focusing on Mr. Castorena's criminal history, the court next propounded that

[w]hat is also remarkable is that your prior criminal conduct is the same type of criminal conduct that brings you here today. This tells me that in terms of your history and characteristics you have a total disregard for the laws of this country in order to reap substantial financial gain through the violation of that law. And prior sentences haven't deterred you one bit.

-7-

Even under the advice of these Guidelines it would not be unreasonable for me to sentence you to a term of imprisonment above the 87 months.

Id.

The court then reasoned that imposing an 87-month sentence would promote respect for the law, "have a deterrent effect on others," and "protect[] the public and this Republic from further crimes." Id. at 10. This timely appeal followed.

## II. DISCUSSION

Post-Booker, we review sentencing decisions for reasonableness. Rita v. United States, 127 S. Ct. 2456, 2464 (2007); United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam). Reasonableness has both procedural and substantive components which encompass, respectively, "the method by which the sentence was calculated" and "the length of the sentence." Kristl, 437 F.3d at 1055 (emphasis omitted).

On appeal, Mr. Castorena declines to attack the length of his 87-month prison term and thus concedes his sentence is substantively reasonable. Instead, he styles a procedural reasonableness challenge, arguing that the district court's method of imposing his sentence was flawed because it misunderstood the uncontested facts set forth in the PSR. Focusing on the district court's explanation of his high-end Guidelines sentence, he contends the court incorrectly believed that (1) his "offense conduct encompassed extensive activity that pre-

dated the [charged conduct]," (2) "the [PSR] showed a greater pattern of illegal *reentry* than it did"; and (3) he "had *three* felony convictions not counted due to their age, rather than *two*." Aplt's Br. at 2 (emphasis added).

Because Mr. Castorena did not call these alleged errors to the district court's attention at the sentencing hearing, we review for only plain error. United States v. Ruiz-Terrazas, 477 F.3d 1196, 1199 (10th Cir. 2007). For Mr. Castorena to prevail under this standard, he must establish there is (1) "error," (2) "that is plain," and (3) "that affects substantial rights." United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotation marks and alteration omitted). If all three conditions are satisfied, we may exercise our discretion to notice the error, but only if (4) the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotation marks and alteration omitted). Applying this stringent standard, we address the three errors alleged by Mr. Castorena in turn.

A. OFFENSE CONDUCT

Mr. Castorena first argues the district court erred in assessing the seriousness of the conduct underlying his guilty plea to conspiracy to launder monetary instruments because it "mistakenly conflated" that conduct with the uncontested facts set forth in the "Background Information" section of the PSR. Aplt's Br. at 23. As evidence of this alleged error, Mr. Castorena points out, among other things, that even though his offense conduct only involved

-9-

approximately $19,000 from the sale of one hundred or more counterfeit documents, the district court stated at sentencing that "[t]he breadth and scope of the criminal conduct in *your case* for which you are an organizer is simply breathtaking" because it involved "[*m*]*illions* of counterfeit identity documents [and] *millions* of dollars in benefit from these illicit gains." Rec. vol. II, at 7 (emphasis added).

While the language employed by the district court during sentencing was perhaps imprecise, we find Mr. Castorena's allegation of error far-fetched. First, the record indicates the court was well-aware of the facts underlying Mr. Castorena's guilty plea. Indeed, the court read them aloud at the plea hearing, which occurred less than three months before the sentencing hearing. Moreover, just prior to making the allegedly erroneous statements, the district court explicitly referenced the paragraphs comprising the PSR's "Background Information" section. See Rec. vol. II, at 7. Because this section is clearly set-off from the PSR's recitation of the offense conduct, it is evident to us the court referred to the uncontested facts therein as uncharged, relevant conduct justifying Mr. Castorena's high-end Guidelines sentence. This is undisputedly proper. See United States v. Rodriguez-Felix, 450 F.3d 1117, 1131 (10th Cir. 2006) ("In the aftermath of Booker, we have routinely permitted a district court to enhance a defendant's sentence using uncharged conduct proven to the court by a preponderance of the evidence.").

Accordingly, we conclude there was no error and need not address the remaining disjunctive plain error elements.

B. UNLAWFUL ENTRIES

Mr. Castorena next argues the district court erred in stating that his 87-month sentence was justified, in part, because he had "*repeatedly* violated the law of this country by *entering* this country illegally." Rec. vol. II, at 9 (emphasis added). Although the district court's statement concerned illegal *entries*, Mr. Castorena premises this challenge on the lack of explicit information in the PSR regarding the *removal* actions taken by the United States – if any – following three of his four prior convictions. He emphasizes that the PSR, in discussing his criminal history, only provides that he was deported after his 1995 fraud conviction; it does not indicate whether he was removed after his 1988, 1989, and 2003 convictions.

Despite the lack of specific information regarding *removals*, the undisputed facts in the PSR suggest that Mr. Castorena, an illegal alien, unlawfully *entered* the country at least three times: (1) when he "first entered the United States in 1982," PSR ¶ 70; (2) prior to his 1995 fraud conviction as he admitted "return[ing] to Mexico" for an unspecified period of time after "resid[ing] in Northridge, California, from 1990 to 1993," id.; and (3) before his 2003 conviction for illegal reentry following deportation. These facts are more than sufficient to support the district court's statement that Mr. Castorena "repeatedly"

-11-

entered the country illegally. <u>See</u> 13 Oxford English Dictionary 635 (2d ed. 1989) (repeatedly: "More than once, again and again, frequently").

We therefore conclude the district court committed no error and, as above, do not move beyond the first plain error review prong.

## C. PRIOR CONVICTIONS

Finally, Mr. Castorena asserts the district court erred in stating his 87-month sentence was justified, in part, because he had *three* prior convictions unaccounted for in his criminal history score. Because Mr. Castorena had only two such convictions, it is clear the district court erred and that such error was plain. We thus turn to the third prong of plain error review, asking whether Mr. Castorena has shown that the district court's error affected his substantial rights.

"For an error to have affected substantial rights, 'the error must have been prejudicial: It must have affected the outcome of the district court proceedings.'" <u>United States v. Dazey</u>, 403 F.3d 1147, 1175 (10th Cir. 2005) (quoting <u>Olano</u>, 507 U.S. at 725). We have held that an error is prejudicial when there is a "reasonable probability" that the district court would have imposed a more lenient sentence had it not made the error. <u>Id.</u> (internal quotation marks omitted).

There is no such probability here. At sentencing, the district court supported its imposition of a high-end Guidelines sentence with a litany of reasons that, according to the court, could have justified a "a term of imprisonment *above* . . . 87 months." Rec. vol. II, at 9 (emphasis added). During

its discussion of these reasons, the court placed relatively little emphasis on the number of convictions unaccounted for in Mr. Castorena's criminal history score. It instead focused on the "egregiously serious" nature of Mr. Castorena's offense conduct and his admitted role in the CFO. Id. at 8. Even when discussing Mr. Castorena's prior convictions, the court did not dwell on their number but their nature. Indeed, the court stated that it was "remarkable" that Mr. Castorena's offense conduct was of the "same type" as the conduct underlying several of his prior convictions and that this demonstrated "a total disregard for the laws of this country in order to reap substantial financial gain through the violation of that law." Id. at 9. The court further remarked that an 87-month sentence would protect the public because Mr. Castorena's recidivism indicated that he had "no inclination to comport [his] conduct with the law of this country." Id. at 10.

In light of these compelling statements, there is (at most) a miniscule likelihood that the district court would have imposed a lesser sentence had it been aware that Mr. Castorena had two, rather than three, convictions unaccounted for in his criminal history score. We therefore find that Mr. Castorena has not satisfied his burden of establishing that the district court's error affected his substantial rights so as to satisfy the third plain error prong. Even assuming this error somehow affected Mr. Castorena's substantial rights, we cannot say it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings" under the fourth plain error prong. Olano, 507 U.S. at 732 (citation

and internal quotation marks omitted).

## III.  CONCLUSION

For the reasons detailed above, the sentence imposed by the district court is AFFIRMED.

Entered for the Court,


Robert H. Henry
Circuit Judge